**Affirmed and Memorandum Opinion filed April 30, 2019.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-17-00953-CR

**JUAN JAVIER LAGOS, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court
Harris County, Texas
Trial Court Cause No. 1469774**

## MEMORANDUM OPINION

Appellant was convicted of indecency with a child and sentenced to ten-years confinement. *See* Tex. Penal Code §§ 12.33, 21.11(a)(1), (d). Appellant brings two issues on appeal: (1) whether the trial court committed reversible error by overruling appellant's objections to the State's closing argument during the punishment phase and (2) whether the assessment of a "summoning witness/mileage" fee facially violates the separation-of-powers provision of the Texas Constitution. We affirm.

## I. BACKGROUND

Appellant was the owner of—and a coach at—a boxing gym. On the afternoon of May 30, 2014, he asked one of his students, a thirteen-year-old girl, to join him alone in his office because she had not applied enough special boxing lotion to her body. Behind that closed door, appellant grabbed her wrist with one hand. Appellant placed his other hand under her sports bra and touched the complainant's breasts. Appellant also licked her nipples. He told her not to tell anyone what happened.

A few weeks later, the complainant told her mother. When confronted by the complainant's mother, appellant apologized and asked her not to contact the police. Appellant was indicted for indecency with a child. A jury found him guilty of the offense and assessed his punishment at ten-years confinement.

## II. ANALYSIS

### A. State's closing argument during punishment

In his first issue, appellant argues that the trial court committed reversible error by overruling appellant's objections to the State's improper statements during closing argument in the punishment phase. Specifically, appellant contends that the State improperly injected facts from outside the record and invited the jury's speculation regarding the complainant's later having children and enrolling them in sports:

> [STATE]: [The complainant] is 16 right now. In six years she will be graduating from college. At some point she will hopefully start a family. And I want you to think of the day that when [the complainant] is trying to sign up her daughter for team sports, or for an individual sport—
>
> [DEFENSE]: Judge, I'm going to object to that. That's pure speculation, and that's going outside the record, and it's not relevant.
>
> [STATE]: Your Honor, this is—

2

THE COURT: The objection is overruled to what has been stated thus far. You have two minutes remaining.

[STATE]: Thank you, Your Honor.

Think of the day that she has a daughter of her own and every decision she makes is going to be influenced—

[DEFENSE]: Same objection, Judge.

THE COURT: It's overruled.

[STATE]: —by what that man did to her. She will carry this for the rest of her life. . . .

When are you ready for him to be in your community? That's how you come to this number. Twenty is not the wrong answer. Think about this. In six years [the complainant] will be finally coming home from college, or be done with college. Is she going to have to worry about him then? Is it ten years, maybe when she starts a family, she's going to have to worry about him then?

[DEFENSE]: Judge, I'm going to object to that. It's pure speculation. It's talking about the future.

THE COURT: It's overruled.

[STATE]: Is it 20 years when her own kids are in sports that she's going to have to worry about it then?

[DEFENSE]: Again, Judge, this is pure speculation. There is no evidence of this whatsoever.

THE COURT: Sustained.

[DEFENSE]: May we ask this jury to disregard?

THE COURT: Disregard the last statement.

[DEFENSE]: Move for a mistrial.

THE COURT: Denied.

"Permissible jury argument generally falls into one of four areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of opposing counsel; or (4) a plea for law enforcement." *Berry v. State*, 233 S.W.3d 847, 859 (Tex. Crim. App. 2007). However, the Texas

3

Court of Criminal Appeals has explained that the State may not use closing argument "to get evidence before the jury which is outside the record and prejudicial to the accused." *Borjan v. State*, 787 S.W.2d 53, 57 (Tex. Crim. App. 1990); *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986).

According to the State, its argument constituted a proper plea for law enforcement, was in response to appellant's argument asking the jury to consider the effects of the crime on him and his family, and "merely asked the jury to consider one of the many effects of appellant's crime, as shown by the evidence." We agree with the State that there is evidence of how the crime emotionally and psychologically affected the complainant: she had depression, anxiety, anger and aggression issues, behavioral changes, and nightmares; used drugs to help her sleep; and was suspended from school. Evidence of a crime's impact on a victim is generally admissible during punishment because it bears on the defendant's personal responsibility and moral guilt. *See, e.g.*, *Stavinoha v. State*, 808 S.W.2d 76, 77–79 (Tex. Crim. App. 1991) (per curiam) (psychological aftereffects of aggravated sexual assault on child victim and his mother).

However, we disagree with the State that its argument stayed within the bounds of permissible argument based on this evidence. The cases cited by the State do not persuade us that its specific statements relating to the complainant's potential future life decisions were proper pleas for law enforcement. *Cf. Hall v. State*, 643 S.W.2d 738, 741 (Tex. Crim. App. 1983) (proper plea for law enforcement when State asked jury to draw on general common knowledge that defendant's crimes— sexual abuse, sexual abuse of child, and indecency with child—would have lasting effects on victims); *Stone v. State*, 574 S.W.2d 85, 90 (Tex. Crim. App. [Panel Op.] 1978) (same when State asked jury to consider that child victim would have "scars of some sort" and lasting embarrassment from crime of sexual abuse). Nor does

4

asking the jury to consider a speculative aspect of the complainant's future properly respond to appellant's argument that he suffered emotional effects from the crime, or to his argument that his wife and son would lack financial support while appellant was incarcerated. *See Brown v. State*, 270 S.W.3d 564, 572 (Tex. Crim. App. 2008) (rejecting State's position that its statements were allowed in response to defense argument when they were not "tailored to the facts in the record or to misstatements by opposing counsel"). There is no evidence in the record regarding the complainant's future plans to have children and involve them in sports, which is what the State specifically asked the jury to consider. Therefore, we conclude that the State's pleas for the jury to consider the complainant's fears and worries, when her future children are in sports, "strayed beyond the evidentiary basis in the record"; and the trial court erred by overruling appellant's objections. *See Palermo v. State*, 992 S.W.2d 691, 696–97 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (improper for State to ask jury to (1) think about what Christmas forever would be like for family of murder victim and how family would be laying wreath on victim's grave rather than composing Christmas lists and (2) imagine how parent who already had received one call in middle of night from morgue would fear receiving another similar call).

This does not end our inquiry, however. Improper-argument error is nonconstitutional in nature, and a nonconstitutional error "that does not affect substantial rights must be disregarded." Tex. R. App. P. 44.2(b); *Martinez v. State*, 17 S.W.3d 677, 692–93 (Tex. Crim. App. 2000). We will affirm the judgment of the trial court if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In assessing whether an appellant's substantial rights were affected, we balance three factors: (1) the severity of the misconduct (prejudicial effect); (2) any curative

5

measures; and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed). *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004) (appropriately tailored version of harm factors from *Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998), applies in "noncapital trial punishment phase context").

*Severity of the misconduct.* Appellant does not contend that the State's comments were particularly shocking, inflammatory, or egregious. Rather, appellant argues that the State's comments were not "single" or "isolated" and were "emphasized by the State at the end" of its closing argument.

While the State did make and repeat these statements near the end of its closing argument, the record reflects that fewer than two of the eleven pages comprising the State's argument included the improper statements related to the complainant's future children engaging in sports. The State presented several other lines of argument. For example, the State emphasized that the jury also should keep the complainant in mind when determining justice in this case and that it was appellant who was responsible for his family's suffering. The State discounted the value of appellant's mitigation evidence where there was evidence from a State's witness (director of the Harris County Children's Assessment Center) that sex offenders "tr[y] to look like you and me." The State also pointed out that appellant had taken advantage of the complainant's trust and his position of authority as a coach. The State argued that the jury's role was to protect its community and the law permitted the jury to consider the full punishment range. The State again described the facts of the crime, telling the jury that the complainant and her family "will live with [that day/pain] for the rest of their lives." The State told the jury it was allowed to be angry. Viewing the State's closing as a whole, it does not appear that the State was making a willful and calculated effort with its misconduct to deprive appellant

6

of a fair and impartial trial. *See Brown*, 270 S.W.3d at 573 (citing *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997)). This factor appears to be neutral or mildly prejudicial in favor of appellant.

*Curative measures.* Appellant next argues that no curative measures were taken. This is incorrect. *See Hawkins*, 135 S.W.3d at 84 (all corrective measures and admonitions, including those in jury charge, must be considered). Prior to reading the jury charge on punishment, the trial court admonished: "Again, keep in mind that what the lawyers say during closing argument is not evidence." The trial court described "evidence" as what the jury "heard in this courtroom from the witness stand" and "the documents and items that were admitted." The jury charge further included this instruction: "During your deliberations in this case, you must not consider, discuss, nor relate any matters not in evidence before you. You must not consider nor mention any personal knowledge or information you may have about any fact or person connected with this case which is not shown by the evidence."

Finally, we consider the full context of the State's closing. Although the trial court overruled the first three objections by appellant, the court sustained his final objection that the State's statement—"Is it 20 years when her own kids are in sports that she's going to have to worry about it then?"—was "pure speculation" and there was "no evidence of this whatsoever." The trial court instructed the jury to disregard the State's statement. The trial court denied appellant's motion for mistrial; however, appellant does not raise this as an error on appeal. Absent evidence to the contrary, we presume that the jury followed all the trial court's instructions. *See Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). This factor tends to weigh in favor of the State.

*Likelihood of same punishment being assessed.* The range of appellant's possible punishment was two to twenty years. *See* Tex. Penal Code §§ 12.33,

7

21.11(a)(1), (d). Appellant asked for the minimum, the State asked for "somewhere in the top of that range," and the jury landed at ten years. Appellant emphasizes the strength of his mitigation evidence as someone with no criminal record, who attends church, and is a family man. He argues that he was harmed by the State's inappropriate comments.

As discussed above, however, the State urged that appellant was a sex offender who took advantage of his position and power as a trusted coach and authority figure in the community: "He was able to infiltrate our complainant's life due to the way he carried out himself the rest of the time." The State presented argument not only about the details of appellant's indecent behavior, but also the "horrific" emotional and psychological effects that appellant's crime and betrayal of the complainant's trust had on her, which she would "carry . . . for the rest of her life." The jury was permitted to hold appellant morally accountable for psychological trauma to the complainant. *See Johnson v. State*, 987 S.W.2d 79, 87 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd); *Stavinoha*, 808 S.W.2d at 79. Based on our review of the record, we conclude that the jury likely would have awarded a similar punishment even without the challenged remarks. In other words, the State's improper conduct did not have an "appreciable impact on the jury's consideration of appellant's punishment." *See Palermo*, 992 S.W.2d at 697. This factor also tends to weigh in favor of the State.

After carefully considering the three factors, we conclude that the State's comments did not affect appellant's substantial rights. We overrule his first issue.

## B. Constitutionality of "summoning witness/mileage" fee

In his second issue, appellant argues that the $60 "summoning witness/mileage" fee pursuant to Code of Criminal Procedure article 102.011(a)(3) and (b) is facially "unconstitutional to the extent it allocates funds to the general fund

of the city, county, and State because those funds allow spending for purposes other than legitimate criminal justice purposes in violation of the separation of powers provision of the Texas Constitution."[1] *See* Tex. Const. art. II, § 1.

This court recently overruled a facial constitutional challenge to article 102.011 where the appellant also challenged the "summoning witness/mileage" fee. *Lopez v. State*, 565 S.W.3d 879, 890–91 (Tex. App.—Houston [14th Dist.] 2018, pet. filed). This court concluded that the sheriff's fee for summoning witnesses and for related mileage is facially constitutional because "the sheriff's fee is an actual recoupment of the out of pocket expenses incurred for summoning witnesses and for associated mileage." *Id.* at 891. There, we held that the appellant had "not met his burden to show that the sheriff's fees collected under the statute cannot be used for legitimate criminal justice purposes in all possible circumstances." *Id.* Likewise, appellant has not met his burden here.

Applying *Lopez*, we overrule appellant's second issue.

### III.   CONCLUSION

Having overruled appellant's issues, we affirm the trial court's judgment.

/s/     Charles A. Spain
Justice

Panel consists of Justices Christopher, Spain, and Poissant.

Do Not Publish—TEX. R. APP. P. 47.2(b).

---

[1] In his briefing, appellant relied on a panel opinion from the First Court of Appeals. However, post briefing, the First Court of Appeals, sitting en banc, concluded that the "summoning witness/mileage" fee in article 102.011(a)(3) and (b) was not facially unconstitutional. *Allen v. State*, —S.W.3d—, No. 01-16-00768-CR, 2018 WL 4138965, at *5–*9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2018, pet. granted) (op. on reh'g).